582 F.2d 1097
 17 Fair Empl.Prac.Cas. 1358, 17 Empl. Prac.
Dec. P 8551
BURLINGTON NORTHERN, INC., Plaintiff-Appellant,
and
Brotherhood of Railway, Airline & Steamship Clerks, etc.,
Intervening Plaintiff-Appellant,
v.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Ethel Bent Walsh,
Commissioner, Equal Employment Opportunity Commission, Bruce
Elfvin, Senior Trial Counsel, Equal Employment Opportunity
Commission, and Odas Nicholason, Assistant General Counsel,
Equal Employment Opportunity Commission, Defendants-Appellees,
and
William E. McBride and William H. Butler, Intervening
Defendants-Appellees.
 No. 78-1486.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 30, 1978.
Decided Aug. 15, 1978.
 
 Lawrence I. Kipperman, Sidley & Austin, Chicago, Ill., for plaintiff-appellant.
 Raj K. Gupta, Washington, D. C., for defendants-appellees.
 Before PELL and BAUER, Circuit Judges, and HARPER, Senior District judge.*
 PELL, Circuit Judge.
 
 
 1
 In response to a wide-ranging charge by Commissioner Ethel Bent Walsh, the Equal Employment Opportunity Commission began a national investigation into possible discrimination in employment by Burlington Northern, Inc. During the course of the patulous investigation, Burlington has voluntarily cooperated with the Commission by answering numerous interrogatories and providing substantial quantities of documents and records.[1] The national investigation has been consolidated with the Commission's processing of approximately 60 individual discrimination charges against Burlington. Burlington has also voluntarily provided materials dealing specifically with at least some of these charges.
 
 
 2
 After the Commission's investigation began, William McBride and William Butler, two black Burlington employees, requested and obtained right-to-sue letters from the Commission (See 42 U.S.C. § 2000e-5(f)) and filed a private action on behalf of a nationwide class of black employees of and applicants for employment with Burlington.[2] A former employee, Roy Hill, has filed an action on behalf of a class located in the Northern District of Illinois,[3] and DuBois Gilliam filed a complaint originally purporting to represent a class of black Burlington employees in Nebraska and Iowa, but which he now is seeking to amend to expand the class to national scope.[4]
 
 
 3
 A number of individual charging parties have requested access to the Commission's national investigatory file on Burlington. Given the Commission's policy of cooperating with private litigants by providing them relevant information (broadly defined) subject to a promise not to make the information public, See EEOC Compliance Manual §§ 83.7(c), 83.3(b), 83.4, 83.5, it is assumed that the Commission will honor these requests if allowed to do so. This case arises from a concrete instance, however, in which no assumptions as to the future are necessary. McBride and Butler have subpoenaed the Commission to produce all documents in the Burlington investigation file, and the Commission has advised Burlington that it will comply with the subpoena. Burlington filed this action to enjoin release of the information in the Commission's investigation file. The district court denied all relief, and Burlington appealed.
 
 
 4
 The issue before us may be simply put: to what degree may the Commission release information gathered in a national investigation of an employer's practices to an individual prosecuting a private class action attacking those practices? Section 709 of Title VII, 42 U.S.C. § 2000e-8, gives substantial investigatory powers to the Commission, and also provides the limit to its power to disclose the information gathered in the investigation. Subsection (e) states:
 
 
 5
 It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year.
 
 
 6
 The Commission's position, expressed in its Compliance Manual (See sections cited above), in 29 C.F.R. § 1610.17(d), and in its brief and argument here, is that individual charging parties are not members of the "public" within the meaning of § 709(e), and that investigative materials may thus be disclosed to them and their attorneys either before or after litigation under Title VII is begun. Burlington argues that charging parties are members of the public to whom nothing may be disclosed before litigation is begun, and that even after a private action is filed, notwithstanding that the charging parties purport to represent a class, the action itself only "involv(es) such information" as is directly relevant to discrimination against the individual charging parties. It insists, therefore, that nothing more may be disclosed. Burlington also argues that class actions, unlike private individual actions, should not be permitted while pattern and practice proceedings continue to pend before the Commission.
 
 
 7
 This case, of course, directly involves only the Commission's plans to disclose investigative material to private litigants who have filed actions under Title VII. If the Commission is correct, however, that charging parties are not members of the public, it would be free to disclose the material to them without regard to whether or not litigation had begun. Accordingly, we address this argument first, and reject it.
 
 
 8
 In our opinion the statutory scheme of enforcing Title VII is entirely inconsistent with the Commission's interpretation of § 709(e). Under the Civil Rights Act of 1964, the Commission had power only to investigate and attempt to conciliate employment discrimination charges, 42 U.S.C. § 2000e-5(a) (1970), and coercive enforcement could only be achieved by a private suit initiated by a charging party, 42 U.S.C. § 2000e-5(e) (1970). By 1972, Congress had become dissatisfied with the effectiveness of this enforcement scheme. See H.R.Rep.No.92-238 (1971), reprinted in 2 U.S.Code Cong'l & Admin.News, pp. 2137, 2139-41, 2144 (1972). The Equal Employment Opportunity Act of 1972 amended Title VII of the Civil Rights Act to establish "an integrated, multistep enforcement procedure culminating in the EEOC's authority to bring a civil action in a federal court." Occidental Life Insurance Company of California v. Equal Employment Opportunity Commission, 432 U.S. 355, 359, 97 S.Ct. 2447, 2451, 53 L.Ed.2d 402 (1977).
 
 
 9
 The right of an individual charging party to file a private action was preserved to allow escape from the "administrative quagmire" which could develop if a case could not promptly be processed by the Commission. See H.R.Rep.No.92-238, Supra, 2 U.S.Code Cong'l & Admin.News at 2147-48; Occidental Life, supra at 364-66, 97 S.Ct. 2447. But there can be no doubt that the enforcement scheme enacted with the 1972 amendments lodged the primary responsibility for insuring equal employment opportunity with the Commission.[5] Because of the Commission's accumulated experience and expertise and its ability, through conciliation and pattern and practice litigation, to achieve results that will benefit an employer's entire workforce, "(t)he Commission has the basic responsibility to achieve the objectives of Title VII." H.R.Rep.No.92-238, Supra, 2 U.S.Code Cong'l & Admin.News at 2149. A section-by-section analysis of the amendments that was presented to the Senate before its final vote on the amending bill, 118 Cong.Rec. 4942 (1972), and that was put before both the Senate, 118 Cong.Rec. 7165, 7168 (1972), and the House of Representatives, 118 Cong.Rec. 7563, 7565 (1972), in conjunction with the Conference Report on the amendments, which analysis the Supreme Court has said "provides the final and conclusive confirmation of the meaning" of the private remedy provisions of the 1972 Act, Occidental Life, supra at 365, 97 S.Ct. at 2454, makes the primacy of the Commission's enforcement powers quite clear: "It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC." See Sears, Roebuck and Company v. Equal Employment Opportunity Commission, Nos. 77-1822, 77-1995, 77-1996 (June 9, 1978), slip op. at 4, 11, --- U.S.App.D.C. --- at ---, ---, --- F.2d ---- at ----, ----.
 
 
 10
 We think it plain, and the Commission does not disagree, that the effect, and indeed the purpose, of disclosing investigative material to charging parties as if they were not members of the public would be to encourage the filing of private lawsuits. It is also obvious that this effect will necessarily undercut the preferred enforcement scheme of comprehensive negotiation and settlement, Sears, Roebuck, supra at --- - ---, --- F.2d at ---- - ----; and See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 461, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), by diffusing the energies of the employer and the EEOC and by injecting possibly unnecessary adversariness into the process of dealing with employment practices. Moreover, the disclosure policy, which the Commission argues is appropriate, will almost certainly interfere with its ability to obtain voluntary cooperation with its investigative efforts. If employers know that whatever they provide to the Commission will be turned over to litigious charging parties, they will have an incentive to force the Commission to go to court under Section 709(c) of the Act to obtain the information sought, if only to obtain an enforceable court order that the information thus disclosed will not be disclosed further. Sears, Roebuck, supra --- U.S.App.D.C. at --- - ---, --- F.2d at ---- - ----.[6] We find absolutely no reason to believe that the Congress intended, in enacting § 709(e), to undercut and hinder the primary means of enforcing equal employment opportunity merely to facilitate the filing of private litigation, which as we have said, was contemplated as a back-up remedy.[7] Accordingly, we hold, as did the District of Columbia Circuit in Sears, Roebuck, that individual charging parties are members of the public under § 709(e) to whom investigatory materials may not be disclosed prior to the institution of judicial proceedings.
 
 
 11
 We recognize that in H. Kessler & Company v. EEOC, 472 F.2d 1147 (5th Cir. 1973) (en banc), Cert. denied, 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 398, the Fifth Circuit expressed the view that disclosure to an individual charging party of the contents of his individual investigation file was not a "public" disclosure. Kessler is subject to being distinguished on the basis of the limited disclosure involved there,[8] although it would seem, conceptually that the definition of "public" ought to turn on who is to receive the information rather than how much may appropriately be given the recipient. We are constrained respectfully to disagree with Kessler, as did Sears, Roebuck, because Kessler gave no consideration to the weighty problems of undercutting the Commission's primary role in Title VII enforcement, and we think the decision's underlying concerns about the difficulties of obtaining counsel for a private action have been substantially alleviated by the 1972 Act. See 42 U.S.C. §§ 2000e-5(f)(1), 2000e-5(k); Sears, Roebuck, supra, --- U.S.App.D.C. at ---, --- F.2d at ----.
 
 
 12
 Once a Title VII proceeding "involving (investigative) information" has been instituted, § 709(e)'s prohibition against making the information "public in any manner whatever" ceases. McBride and Butler have, of course, filed such a suit, and Burlington agrees that they are entitled to the investigative material to the degree it is directly relevant to their individual charges of discrimination.[9] The remaining question is whether, because they filed a class action suit, they are entitled to information not directly relevant to their individual charges but which is relevant to the allegations of discrimination against the broader class.
 
 
 13
 Burlington's first argument here is that class actions themselves should not be permitted while the Commission pursues pattern and practice remedies. We agree with Burlington that the maintenance of such actions could hinder effective negotiation and settlement in the Commission, but we disagree with its conclusion. In contrast to § 709(e), which plainly evinces Congressional intent to limit the use of information gathered in Commission investigations, there is nothing in the statute to suggest that a private party with a right to file an action may not attempt to do so on behalf of a class. Were we inclined to imply such a limit, the legislative history would cure us of the inclination. The section-by-section analysis of the 1972 amendments to Title VII, referred to above, clearly states that in establishing the enforcement provisions of the 1972 Act, "it is not intended that any of the provisions shall affect the present use of class action lawsuits under Title VII in conjunction with Rule 23 of the Federal Rules of Civil Procedure." 118 Cong.Rec. 7168, 7565 (1972). The analysis points out that a "provision limiting class actions was contained in the House bill and specifically rejected by the Conference Committee." Id. We need not consider the extent to which the pendency of EEOC pattern and practice proceedings might influence a district judge's discretion in deciding whether to certify a class in any given action, See, e. g., Franklin v. General Electric Co., 15 F.E.P. Cases 1084 (W.D.Va.1977), for that question is not before us. It is enough to say that Congress has left the class action device open in Title VII cases.
 
 
 14
 But that is not the same thing as saying that the Commission ought to undercut the effective performance of its important responsibilities by providing self-styled class representatives with the mass of free discovery that could be expected to be found in the files of a national investigation by the Commission. At least prior to certification of a class, the investigative information "involv(ed)" in a private Title VII action, within the meaning of § 709(e), is only that directly relevant to the individual plaintiff's claims. The Commission may disclose no more than that to the private litigant.[10] Any broader construction of the Commission's power to disclose its investigation's fruits would create the very real risk we have discussed above, that the Commission in its zeal to aid those engaged in the secondary enforcement of Title VII will emasculate its ability to proceed effectively with what Congress in no uncertain terms intended to be the primary means of insuring equal employment opportunity.
 
 
 15
 For the reasons stated herein, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent herewith. Pending disposition by the district court on remand, this court's unpublished order of May 9, 1978, that the Commission make no disclosures of the pertinent information will remain in effect. Circuit Rule 18 will not apply on remand.
 
 
 16
 Reversed and Remanded.
 
 
 
 *
 Senior Judge Roy W. Harper of the Eastern and Western Districts of Missouri sat with the panel by designation and heard oral argument. He thereafter disqualified himself from further consideration of the case, and did not participate in the preparation or issuance of this opinion
 
 
 [1]
 Burlington says that among the information disclosed to the Commission was a substantial amount of confidential and sensitive business information. The Commission does not deny this. The information is not part of the record in the case, so we cannot determine the truth of Burlington's assertion, but our disposition of the issue before us does not turn on its truth or falsity
 
 
 [2]
 McBride v. Burlington Northern, Inc., No. 78 C 269 (N.D.Ill.)
 
 
 [3]
 Hill v. Burlington Northern, Inc., No. 78 C 308 (N.D.Ill.)
 
 
 [4]
 Gilliam v. Burlington Northern, Inc., No. Civ. 77-0-423 (D.Neb.)
 
 
 [5]
 Indeed, even prior to the 1972 Act, "(c)ooperation and voluntary compliance (through the Commission's offices) were selected as the preferred means for achieving this goal." Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974)
 
 
 [6]
 As the court in Sears, Roebuck points out, the Commission has no apparent means of enforcing the nondisclosure agreement which it requires those to whom it discloses information to sign. Id. at ---, --- F.2d at ----
 
 
 [7]
 The Commission argues that in Johnson, supra, the Court, while recognizing the possible interference that a civil action under 42 U.S.C. § 1981 might create with the negotiation and settlement provisions of Title VII, expressly sanctioned such an effect as consistent with Congress' plain intentions. That, of course, is true, but the dispositive point is that the Court found a plain intention that Title VII only supplement and not supplant § 1981 remedies. There is absolutely nothing to suggest that Congress intended the secondary remedy of Title VII itself to wreak havoc on that title's intended primary remedy. Indeed, as we have indicated, the private action in Title VII was intended precisely as an Escape from the primary remedy in cases where that remedy was not promptly effective. In apparent recognition of Congress' manifest purpose, the Commission has promulgated regulations indicating that the Commission's typical response when a private action is filed is to cease pursuit of administrative remedy for the private litigant's claim. 29 C.F.R. § 1601.28(a)(3). When this is done, naturally, there is nothing left of the primary remedy which the secondary private remedy could undercut
 
 
 [8]
 Such a distinction would not, of course, advance the Commission's position here, where much broader disclosure is planned
 
 
 [9]
 The Commission advises us that there no longer are unitary files on the investigation of McBride's or Butler's individual charges, the materials having been consolidated with the national investigation file. We agree with the parties that no one's rights should be determined on the basis of the label attached to an investigation file. To the degree material in the national investigation file either was or would normally have been gathered in the individual investigations of McBride's or Butler's charges, disclosure would be appropriate. Mosley v. General Motors Corp., 10 F.E.P. Cases 1442, 1445 (E.D.Mo.1975)
 
 
 [10]
 We note, in this regard, that the language of § 709(e) was contained in the Civil Rights Act of 1964, pursuant to the terms of which the Commission had no jurisdiction to pursue pattern and practice remedies. The investigative files compiled prior to the 1972 amendments, then, would not be expected to contain any more than information relevant to individual charges. This confirms our interpretation that the cessation of the prohibition against disclosure when a proceeding "involving such information" was initiated was never intended as authority to disclose information not relevant to the charges brought by the individual(s) initiating the proceeding