607 F.2d 1075
 20 Fair Empl.Prac.Cas. 1752,
21 Empl. Prac. Dec. P 30,311
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellee,
v.
JOSEPH HORNE COMPANY, a Division of Associated Dry Goods
Corporation, Appellant.
ASSOCIATED DRY GOODS CORPORATION, Appellee,
v.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant.
 Nos. 78-1695, 78-1696.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 4, 1979.
Decided Oct. 10, 1979.
 
 Raj K. Gupta, E.E.O.C., Washington, D. C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, Washington, D. C., on brief), for E.E.O.C.
 Roger S. Kaplan, New York City (Richard W. Schey, Jackson, Lewis, Schnitzler & Krupman, New York City, on brief), for Joseph Horne Co. and Associated Dry Goods Corp. (Robert E. Williams, Douglas S. McDowell, Frank C. Morris, Jr., McGuiness & Williams, Washington, D. C., on brief), as amicus curiae.
 Before HAYNSWORTH, Chief Judge, and WINTER and HALL, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 In these consolidated cases, the Equal Employment Opportunity Commission (EEOC) sought to enforce its administrative subpoena Duces tecum to obtain information about the employment practices of Joseph Horne Company (Horne), a wholly owned subsidiary of Associated Dry Goods Company (Associated), with regard to race and sex, and Associated sought to challenge the validity of certain practices of EEOC relating to disclosure of EEOC investigative files to charging parties both by a suit for declaratory and injunctive relief and by resistance to the subpoena. The district court held that the EEOC procedural regulations set forth in 29 C.F.R. §§ 1601.20 and 1601.17(d) and the special disclosure rules contained in § 83 of the EEOC Compliance Manual were void, invalid and unenforceable to the extent that they authorize EEOC to disclose to charging parties any information in EEOC investigative files. It therefore enjoined such disclosures and it granted enforcement of the subpoena subject to this registration on the use of the data to be obtained. Finally, Associated's request for attorneys' fees was denied.
 
 
 2
 Both parties appeal, and we affirm.
 
 I.
 
 3
 From November 1971 through June 1973, several employees and former employees of Horne filed race and sex discrimination charges with EEOC. The latter undertook to investigate the charges and it served interrogatories on Horne, seeking relevant information. Horne, however, refused to answer the interrogatories without assurances from EEOC that the answers would not be disclosed to the charging parties, their attorneys, or others. EEOC's view of its authority and its policy is directly to the contrary, See 29 C.F.R. §§ 1601.20 (current version at 29 C.F.R. § 1601.22) and 1601.17(d); § 83 of EEOC Compliance Manual, and it declined to give the requested assurances. EEOC therefore issued a subpoena Duces tecum to obtain the information. Horne petitioned EEOC to revoke the subpoena. At the time, EEOC had three commission members, two of whom affirmatively approved the decision not to revoke it. When Horne's petition was denied, Horne did not comply with the subpoena; but Associated filed an action challenging the Commission's disclosure policies and seeking declaratory and injunctive relief. EEOC in turn instituted suit to enforce compliance with its subpoena and the cases were consolidated and decided together.
 
 II.
 
 4
 The first issue that we must address is Associated's argument that the subpoena was invalidly issued because EEOC lacked a quorum when it denied Horne's petition to revoke the subpoena. Its argument is premised upon the fact that the Commission has a statutory size of five members, 42 U.S.C. § 2000e-4(a), with a direction that three shall constitute a quorum, 42 U.S.C. § 2000e-4(c), and the record shows that only two commissioners voted in writing to deny the petition to revoke the subpoena, notwithstanding that 29 C.F.R. § 1601.15(b) (1975) in effect at the time provided that a petition to revoke a subpoena shall be reviewed by the Commission. The district court was of the view that since the two votes approving denial of the petition would likely have prevailed in any event, any absence of the third member was immaterial and only a De minimis deviation from EEOC's then regulation.
 
 
 5
 We are in essential agreement with the district court. We have heretofore approved the validity of the regulation which permits the Compliance Director's determination of whether to permit a subpoena to issue to prevail unless the Commission decides otherwise. EEOC v. South Carolina National Bank, 562 F.2d 329, 333 (4 Cir. 1977). Under the regulation, the members of the Commission need take affirmative action only if they conclude to reverse the Compliance Director's determination. Here the record shows that a majority of the then Commission voted to sustain issuance of the subpoena so that the subpoena would have issued regardless of the vote of the third member. Since we view a vote on the correctness of the Compliance Director's determination not a consultive act requiring an exchange of views, we think it makes no difference to the validity of the subpoena that the record does not show a vote by the third member.
 
 III.
 
 6
 The Commission appeals from the determination that the disclosure to charging parties and their attorneys of investigative materials prior to suit is in violation of 42 U.S.C. § 2000e-5(b) and 2000e-8(e), and therefore 29 C.F.R. §§ 1601. 20 (current version at 29 C.F.R. § 1601.22) and 1601.17(d) and the special disclosure rules of § 83 of EEOC Compliance Manual are void to the extent that they provide otherwise.
 
 
 7
 The restrictions upon disclosure by EEOC of investigative information contained in §§ 2000e-5(b) and 2000e-8(e) and their effect upon the validity of EEOC's regulations and Compliance Manual have been thoroughly considered by three Courts of Appeals with conflicting conclusions. The Fifth Circuit in H. Kessler & Co. v. EEOC, 472 F.2d 1147 (5 Cir. 1973) (in banc), a case on which EEOC heavily relies, held that charging parties and their attorneys are not members of the "public" within the meaning of the restrictive statutory language and consequently the regulations and the Compliance Manual do not exceed the statute and thus are valid and enforceable. The District of Columbia Circuit in Sears, Roebuck & Co. v. EEOC, 189 U.S.App.D.C. 163, 581 F.2d 941 (D.C. Cir. 1978), a case on which the district court in the instant case relied, and the Seventh Circuit in Burlington Northern, Inc. v. EEOC, 582 F.2d 1097 (7 Cir. 1978), Cert. denied, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979), reached the opposite conclusion. While Sears and Burlington attempted to distinguish Kessler (unpersuasively, we think), they also declined to follow it if it were indistinguishable.
 
 
 8
 The analysis of the legal arguments, the legislative history and the policy considerations on both sides of the question are so fully developed in Kessler, Sears and Burlington that we see little purpose in repeating them here, except to comment on two arguments of EEOC which are made to us. First, EEOC contends that a decision prohibiting EEOC from disclosure will unduly restrict it in conducting an investigation as, for example, when EEOC seeks corroboration from the individuals concerned of information supplied by their employer that their qualifications for the position to which they were promoted or for which they were hired were superior to those of the charging party who was not promoted or hired. We think that such corroboration may easily be obtained without violating the statutory restrictions by interrogating those employees on the basis that "it has been said" or "it has been reported" without providing them with letter and verse of the employer's contentions or the specific identity of the representative of the employer advancing the contention. Second, we do not view our decision in Charlotte-Mecklenburg Hospital Authority v. Perry, 571 F.2d 195 (4 Cir. 1978), as supporting EEOC's position in the instant case. That case arose under the Freedom of Information Act and the parties did not dispute the then judicial and administrative construction of Title VII permitting disclosure of investigative files to the party charged and the charging party. The instant case presents the dispute and we resolve it by following the District of Columbia and the Seventh Circuits.
 
 
 9
 We therefore hold that §§ 2000-5(b) and 2000e-8(e) prohibit EEOC from disclosing investigative materials to the parties prior to suit. The provisions of the regulations and the Compliance Manual purporting to authorize such disclosures are invalid and unenforceable.
 
 IV.
 
 10
 For the reasons assigned by the district court, we see no merit in Associated's contentions that enforcement of the subpoena should be forbidden because of EEOC's delay or misconduct in causing it to be issued, or because a charging party (Alice M. Corvino) filed suit to redress the discrimination allegedly practiced by Horne against her. Manifestly, in the view that we take of the case, the district court was correct in denying Associated counsel fees.
 
 
 11
 AFFIRMED.
 
 
 12
 K. K. HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 13
 I concur in that portion of the majority opinion which grants enforcement of the EEOC subpoena and denies the attorney fees requested by Horne, but dissent from the majority's invalidation of the EEOC disclosure rules.
 
 
 14
 The EEOC rules at issue allow an individual who files an employment discrimination charge with the agency, and who is considering pursuing his complaint through private litigation, to inspect portions of the material the agency has gathered in the course of investigating his charge. The majority now holds that this disclosure violates the command of 42 U.S.C. §§ 2000e-5(b) and 2000e-8(e) that the agency shall not "make public" the results of its investigations until litigation involving the information has begun. The majority adopts the analyses of Sears, Roebuck & Co. v. EEOC, 189 U.S.App.D.C. 163, 581 F.2d 941 (D.C. Cir. 1978) and Burlington Northern, Inc. v. EEOC, 582 F.2d 1097 (7th Cir. 1978), cert. denied, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979), decisions based not so much on the language of the statute[1] as on the courts' belief that disclosure would encourage private litigation and "necessarily undercut the preferred enforcement scheme of comprehensive negotiation and settlement." Burlington Northern, 582 F.2d at 1100. I believe that these decisions are predicated upon a fundamental misconception of both the importance of private litigation in Title VII enforcement and the impact of the disclosure rules on the conciliation process.
 
 
 15
 The Commission's disclosure rules, to the extent that they allow a charging party access to his own case file,[2] are narrow in scope. Disclosure of the file contents is permitted only "in connection with pending or contemplated litigation." EEOC Compliance Manual § 83.3(a). No disclosure is made prior to the beginning of the 90-day period during which a private action may be brought, absent a showing of "compelling need." Compare 42 U.S.C. § 2000e-5(f)(1) With EEOC Compliance Manual § 83.3(a). Certain types of information are expunged from the case file before it is disclosed, including the identities and statements of witnesses who have been promised confidentiality by the Commission, and all information concerning the Commission's attempts to settle the charge through conciliation.[3] Id. § 83.6. Once a private action has been brought under Title VII, the statute imposes no restrictions on the public dissemination of relevant material in the EEOC files, except for conciliation information. Therefore, in most cases the practical effect of the disclosure rules is to allow access to investigatory material 90 days, at most, before it would otherwise be disclosed.
 
 
 16
 I do not believe that such a limited disclosure of information would have the dire effects predicted by the Sears and Burlington Northern courts.[4] The Commission contends that the disclosure rules discourage meritless litigation, by informing potential litigants of the weakness of their cases, and that meritorious suits which may be encouraged by the rules complement, rather than hinder, its own enforcement efforts. I find this assessment by the agency responsible for enforcing Title VII, based on thirteen years of experience with the disclosure rules in practice, more persuasive than speculation engaged in by the courts. Cf. Cannon v. University of Chicago, 441 U.S. 677, 705-707, 99 S.Ct. 1946, 1962-1963, 60 L.Ed.2d 560 (1979).
 
 
 17
 The Sears and Burlington Northern decisions, which the majority now adopts, are premised upon a concept of private litigation as the ugly stepchild in the Title VII scheme, to be discouraged whenever possible.[5] But private litigation has been an integral part of the Title VII enforcement scheme since the statute's enactment in 1964. The 1972 Amendments strengthened the Commission's own enforcement powers, but also encouraged private actions through provisions for appointment of counsel and commencement of actions without payment of fees, costs or security. In retaining private litigation as a critical enforcement tool, Congress emphasized that "(t)he primary concern must be protection of the aggrieved person's option to seek a prompt remedy in the best manner available." H.R.Rep. No. 238, 92nd Cong., 1st Sess., Reprinted in 1972 U.S.Code Cong. & Admin.News, pp. 2137, 2148.
 
 
 18
 Congress also recognized that "the nature of Title VII actions more often than not pits parties of unequal strength and resources against each other. The complainant, who is usually a member of a disadvantaged class, is opposed by an employer who not infrequently is one of the nation's major producers, and who has at his disposal a vast array of resources and legal talent." Id. at 2148. This disparity is increased by the fact that "the entire area of employment discrimination is one whose resolution requires not only expert assistance, but also the technical perception that a problem exists in the first place, and that the system complained of is unlawful." Id. at 2144. The disclosure rules, in recognition of this difficulty, provide the aggrieved individual with the benefit of the Commission's "technical perception" at the most appropriate time when he must decide whether to bring a private action. The majority's invalidation of the rules will force the individual to file an action, and then learn through discovery whether he has a meritorious case. I fail to see how this will promote any of the statute's objectives.
 
 
 19
 In upholding the right of an individual to bring an action alleging employment discrimination under 42 U.S.C. § 1981, by-passing the administrative remedies entirely, the Supreme Court stated: "Conciliation and persuasion through the administrative process, to be sure, often constitute a desirable approach to settlement of disputes based on sensitive and emotional charges of invidious employment discrimination. We recognize, too, that the filing of a lawsuit might tend to deter efforts at conciliation, that lack of success in the legal action could weaken the Commission's efforts to induce voluntary compliance, and that a suit is privately oriented and narrow, rather than broad, in application, as successful conciliation tends to be. But these are the natural effects of the choice Congress has made available to the claimant by its conferring upon him independent administrative and judicial remedies. The choice is a valuable one." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). I dissent from the majority's attempt to limit that choice.
 
 
 
 [1]
 Neither the language of the statute nor its history addresses the issue of whether the charging party is a member of the "public" to whom disclosure is forbidden. The Fifth Circuit, sitting En banc and construing essentially the same statutory language, concluded that the term "public" does not include the charging party. H. Kessler & Co. v. EEOC, 472 F.2d 1147 (5th Cir. 1973) (en banc), cert. denied 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 398. See also Charlotte-Mecklenburg Hospital Authority v. Perry, 571 F.2d 195 (4th Cir. 1978), in which this court ordered the disclosure of EEOC investigatory material to a party charged with discrimination, apparently accepting the plaintiff's uncontested argument that the language of Title VII "suggests a manifest distinction between, on the one hand, right of disclosure to the public generally, and, on the other hand, a right of disclosure to the parties themselves . . . (D)isclosure to the parties whether to the party charged or to the charging party is not within the prohibitions of Title VII." 571 F.2d at 199
 
 
 [2]
 The rules also permit the charging party to inspect files containing other charges against the same respondent which allege similar types of discrimination. EEOC Compliance Manual § 83.7(c). I believe that this constitutes "publicizing" the other files, and that this disclosure, prior to litigation involving the information, is forbidden by the statute. I would invalidate the disclosure rules only insofar as they allow a party access to other case files
 
 
 [3]
 The employer in this case contends that confidential business data is included in the materials disclosed by the Commission, although it offers no substantiation for this claim. Regardless of whether the Commission's disclosure rules specifically exempt legitimate trade secrets, and other confidential business information disclosure of such material is forbidden by 18 U.S.C. § 1905, and the Administrative Procedures Act provides an adequate remedy for threatened violations of this statute. See Chrysler Corp. v. Brown, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979)
 
 
 [4]
 In addition to fear that the disclosure rules undercut the Commission's settlement efforts, the Sears court expressed concern that the Commission could not enforce the agreements it requires as a condition of disclosure, which prohibit the charging party from public dissemination of the information. EEOC Compliance Manual § 83.3(b). "(C)ounsel for the Commission asserted that the EEOC . . . could seek to enjoin parties from violating their agreement . . . . When pressed, however, counsel could point to no instance when this had been done." 189 U.S.App.D.C. at 168, 581 F.2d at 946. This may be explained by the Commission's uncontested assertion in this court that there has never been a violation of the agreement in the 13 years during which the rules have been in effect
 
 
 [5]
 This theory is criticized, based upon a thorough review of the legislative history of Title VII, in The Meaning of "Public" in Section 709(e) of the 1964 Civil Rights Act and Access to Information Gathered by the EEOC, 67 Ky.L.J. 430 (1978-79)
 The congressional explanation of the need for the 1972 Amendments casts doubt upon the Sears and Burlington Northern courts' faith in voluntary conciliation as the preferred means of ending discrimination:
 During the preparation and presentation of Title VII of the Civil Rights Act of 1964 . . . (i)t was thought that a scheme which stressed conciliation rather than compulsory processes would be more appropriate for the resolution of this essentially "human" problem. Litigation, it was thought, would be necessary only on an occasional basis in the event of determined recalcitrance. Experience, however, has shown this to be an oversimplified expectation, incorrect in its conclusions . . . (T)he Commission has been able to achieve successful conciliation in less than half of the cases in which reasonable cause was determined. It has been the emphasis of voluntariness that has proven to be most detrimental to the successful operation of Title VII. H.R.Rep. No. 238, 92nd Cong., 1st Sess., Reprinted in 1972 U.S.Code Cong. & Admin.News, pp. 2137, 2143-2144.