SEARS, ROEBUCK AND CO., Plaintiff,

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION et al., Defendants,

and

Carolyn Hendrock, Donna Walker, Intervening Defendants.

SEARS, ROEBUCK AND CO., Plaintiff,

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION et al., Defendants.

Civ. A. Nos. 77-393 and 77-924.

United States District Court, District of Columbia.

July 26, 1977.

S. Richard Pincus, Chicago, Ill., Fred A. Fielding, James S. Wright, Jr., Washington, D.C., for plaintiff.

Katherine Savers McGovern, EEOC, Washington, D.C., for defendants.

Charlotte Hallam, Washington, D.C., Janice Toran, Cleveland, Ohio, for intervening defendants.

## MEMORANDUM

GESELL, District Judge.

The Equal Employment Opportunity Commission ("EEOC") has been investigating Sears, Roebuck and Co. ("Sears") since 1973 as to both race and sex discrimination in employment. Sears seeks a declaratory judgment and injunction in each of these cases to prevent EEOC from releasing data obtained by that agency through its investigation or in the course of settlement discussions.

These related actions were brought when it developed that EEOC intended to release data in its possession to numerous charging parties who have filed discrimination charges against Sears with the Commission. The intervenors are two women who have requested data in contemplation of a class action against Sears. The cases primarily call into question the scope of the disclosure provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(b), 2000e-8(e) (1970 & Supp. V 1975), and the nature and effect of various rules and guidelines promulgated by the Commission to implement Title VII. Prior to this decision the Court entered Orders staying further disclosure *pendente lite.* The issues were sub-mitted to the Court on cross-motions for summary judgment. In all but one aspect, namely whether or not the agency had promised to hold certain information privileged, it appeared that no material issues of fact remained to be resolved. A hearing was held on this one disputed issue, and now, after extensive briefing and oral argument, the matter is ready for disposition.

## I. *Background*

EEOC was created by Congress as the primary enforcement mechanism to assure nondiscrimination in employment. Individuals aggrieved by a violation of Title VII are required to exhaust administrative remedies by filing a discrimination charge with the Commission prior to initiating court action. 42 U.S.C. § 2000e-5 (1970 & Supp. V 1975); *Love v. Pullman Co.,* 404 U.S. 522, 523, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Charges may also be filed by an EEOC Commissioner. When a discrimination charge has been filed, the Commission is empowered to conduct an investigation to determine whether "reasonable cause" exists to credit the charge. 42 U.S.C. § 2000e-5(b) (Supp. V 1975). Where the Commission suspects systematic discrimination by a large employer, all related claims against that employer may be "consolidated" into a single, comprehensive investigation and file. *EEOC Compliance Manual* § 11.

Following investigation the Commission must notify the charging party, the respondent employer, and any "aggrieved person"[1] of its determination. 42 U.S.C. § 2000e-5(b) (Supp. V 1975); 29 C.F.R. § 1601.19b(b) (1976). If no reasonable cause is found, the charge will be dismissed; if reasonable cause is credited, the EEOC must attempt to reach a conciliated agreement with the employer. 42 U.S.C. § 2000e-5(b) (Supp. V 1975). Conciliation failing, the Commission must again notify the charging parties. In the case of a pri-

---

1. The Commission regulations, 29 C.F.R. § 1601.6 (1976), define "aggrieved person" as one on whose behalf a charge has been filed. In its arguments, both written and oral, the EEOC often referred both to charging parties and aggrieved persons. However, upon inquiry by the Court, counsel for EEOC conceded that in this litigation the two terms were synonymous. Nothing in this opinion authorizes the release of investigative data to any individuals not themselves charging parties or counsel for charging parties.

vate employer like Sears, it is also empowered to bring a civil action. *Id.* § 2000e-5(f).

Although resort must first be had to EEOC, private charging parties are not forever tied to the apron strings of the Commission. After a charge has been dismissed or conciliation efforts have failed, the charging party can file a lawsuit against the employer. *Id.* § 2000e-5(f)(1). In addition, the Commission must grant the charging party permission to bring a private action upon his request after 180 days have passed since the filing of the complaint, regardless of whether the Commission's investigative and conciliation efforts have been exhausted or not. *Id.*; 29 C.F.R. §§ 1601.25b(c), .25c(d) (1976).

On August 30, 1973, then-EEOC Chairman William H. Brown issued a charge alleging employment discrimination by Sears on a nationwide basis. Several hundred private discrimination charges filed with EEOC against Sears were consolidated and subordinated to the Commissioner's charge, and a single national investigation went forward, producing a single consolidated file. Pursuant to Commission interrogatories Sears turned over to EEOC a large amount of data it considered sensitive.

On December 15, 1975, during the course of the investigation period, EEOC and Sears commenced what the Commission refers to as "predetermination settlement discussions." These discussions are nowhere authorized by Title VII, but they are contemplated in the Commission's regulations, 29 C.F.R. § 1601.19(a) (1976), and apparently are a regular practice of the Commission. A series of conferences ensued. Sears made various proposals and counterproposals in the form of statistical analyses and breakdowns of its entire personnel scattered through some 2,000 Sears facilities. The data were arranged under various "Affirmative Action Job Categories" and included information as to salary ranges and the sex, race, and number of persons employed in the different groupings. This information had not been requested by EEOC during its regular investigation and indeed was not even available within Sears. It was developed specifically for purposes of settlement at substantial expense to Sears by outside computer specialists.

After predetermination settlement discussions had begun, a number of private charging parties requested that EEOC release to them data from the consolidated file that was relevant to their individual claims. Some of the requested information came from responses to the interrogatories propounded by the Commission to Sears; the remainder was gained by the Commission in the course of predetermination settlement discussions. Some of the requesting parties had filed suit; others were contemplating suit. In all cases the 180-day period had run, and right-to-sue letters had either been received or could have been received from the Commission upon request. In several instances the Commission agreed to release the data subject to a promise of nondissemination by the recipients. Sears then filed suit in C.A. 77–393 to enjoin this release.

By agreement of the parties an Order was entered enjoining disclosure of the data pending resolution of the case. After oral argument on cross-motions for summary judgment had been heard, the Commission, without prior notice to the Court, entered a finding of reasonable cause against Sears in the form of a 250-page "Commission Decision," which analyzed in detail the data gathered by investigation and through settlement proposals. While both EEOC and Sears prepared to enter the statutorily mandated conciliation phase of the administrative process, the Commission sent Letters of Determination ("LODs") to some private charging parties, not only notifying each of the finding of probable cause in the consolidated investigation, but also reciting in varying but substantial detail the factual basis for the determination as it related to the individual's case. A copy of the entire Commission Decision was promised. No admonition against dissemination of the factual findings accompanied those letters.

Sears immediately reacted by filing another suit, C.A. 77–924, this time to prevent disclosure of the Commission Report "or any portion thereof, or any documents or information" provided to EEOC by Sears during the settlement discussions. A temporary restraining order was entered and, by agreement of the parties, has continued in effect. The Commission's position now is that if unrestrained it will continue to issue detailed LODs, accompanied by only "relevant" sections of the consolidated Decision, to all charging parties who have not opted out of the administrative process by filing a private lawsuit against Sears.

In the first case, C.A. 77–393, Sears objects to the threatened disclosure of data in the consolidated file obtained by EEOC both through investigation and in the course of settlement discussions. The Commission proposes to release the data only to charging parties who have requested it, who have filed or are eligible to file private lawsuits against Sears, and who have agreed to hold the data in confidence except in the course of litigation. In the second case, C.A. 77–924, Sears disputes the Commission's right to include factual data in the LODs sent to all charging parties. It also contests the issuance of any part of the Commission Decision to any charging party. The questions raised in each case are comparable. A unified analysis follows.

## II. *Title VII*

The Commission finds authority for release of the information in its regulations and internal guidelines. 29 C.F.R. §§ 1601.-19b(b), .20, 1610.17(d) (1976); *EEOC Compliance Manual* § 83. Sears argues that these provisions are invalid because the regulations and guidelines are contravened by the nondisclosure provisions of Title VII.

### A. *Section 709(e)*

■ In support of its argument, Sears cites § 709(e) of the Act, 42 U.S.C. § 2000e-8(e) (1970), which provides in relevant part:

It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its [investigative] authority . . . prior to the institution of any proceeding under this subchapter involving such information.

Sears contends first that the intended recipients here are members of the "public," and thus disclosure is prohibited where no proceeding [2] has been instituted. But the Commission's regulations have interpreted § 709 so as to exclude charging parties from the term "public." 29 C.F.R. § 1601.20 (1976). This interpretation has been uniformly adopted by courts that have considered the question. *E.g., H. Kessler & Co. v. EEOC,* 472 F.2d 1147 (5th Cir. 1973), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 398 (1973); *National Electrical Contractors Assoc. Pension Trust Fund v. Walsh,* 12 Empl. Prac. Dec. ¶ 11,116 (D.D.C. 1976). Noting the deference to which EEOC regulations are entitled in interpreting Title VII, *see Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Court finds the same conclusion warranted here. Title VII, especially following the 1972 amendments, places great emphasis on the charging parties' role as private attorneys general in eliminating employment discrimination. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 45, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1973). It seems appropriate to make available to the private grievant the investigative resources of the agency charged with the same duties. A literal reading of § 709(e) would require a charging party to file suit as a precondition to disclosure. Such a rule would simply invite the use of litigation as a tool of investigation. Section 709(e) does not prohibit the EEOC from releasing to appropriate charging parties investigative materials relating to their claims prior to institution of a lawsuit.

---

**2.** Neither party argues that the term "proceeding," which is nowhere defined in the Act, encompasses anything other than a formal lawsuit. Although a broader interpretation is ar-

guably possible, *see H. Kessler & Co. v. EEOC,* 472 F.2d 1147, 1151 n. 3 (5th Cir. 1973), no court has so held, and it is eschewed here.

The question of which charging parties are "appropriate" is raised by Sears' next claim. Sears contends in C.A. 77–924 that even if § 709(e) permits the release upon request of investigative data to charging parties contemplating litigation, it does not authorize EEOC to include such information in the LODs sent by the Commission to all charging parties without request. The Commission's position is that even though its regulations provide only that charging parties must be notified of the reasonable cause decision, 29 C.F.R. § 1601.-19b(b) (1976), a naked statement of its finding would be meaningless; the factual basis for the decision must also be supplied. The dispute is a close one. The statute's silence on this and other points reflects the frequent clash of legislative ideals which the Commission and Title VII were meant to serve. Congress intended conciliation and negotiation by the Commission to be the primary means for resolving problems of employment discrimination. *Alexander v. Gardner-Denver Co.,* 415 U.S. at 44, 94 S.Ct. 1011. But at the same time Congress was careful to preserve for private parties the right to remove themselves from the administrative process and file suit as private attorneys general against a discriminatory employer. *Id.* at 45, 94 S.Ct. 1011. Obviously such suits have little chance of success if the individuals are not given access to at least some investigatory data collected on their behalf by EEOC. But by fueling private lawsuits the Commission diminishes its chances of reaching a negotiated settlement, since these suits persist despite an overall agreement between the Commission and the employer. An appropriate resolution of the conflict in this case is to permit the release of data controlled by § 709(e) only to charging parties who specifically request it and who qualify for a right-to-sue letter, whether or not they have received it. LODs need not contain factual recitations; their purpose in the regulatory scheme is only to apprise the charging party of EEOC's progress on his claim. The factual basis for the decision is not only gratuitous; including it in the LOD spawns litigation that can only impede the Commission's conciliation efforts.

Sears argues finally that since all of the charges were consolidated to form a single national investigation, the individual charging parties have somehow lost their special status and are not entitled to disclosure of investigative data from the single, national investigative file. To the extent that information requested is not relevant to the individual charge, Sears' position is correct. But when relevant information is requested by a charging party, the fact that the investigation and file have been consolidated is of no import. Even in an unconsolidated investigation of a private charge EEOC is permitted to go beyond the narrow confines of the complaint to obtain and disclose information "like or relating to" the charge. *See EEOC v. General Electric Co.,* 532 F.2d 359, 364–66 (4th Cir. 1976); *Mosley v. General Motors Corp.,* 10 F.E.P. Cas. 1442, 1445 (E.D.Mo. 1975). Investigative consolidation should neither enhance nor jeopardize the individual's disclosure rights. The question in each case is whether the material requested is relevant to the complaint filed. This is a question, in the first instance, for the Commission.

### B. *Section 706(a)*

Much of the information EEOC seeks to release was not obtained during the normal course of its investigation and thus is not governed by § 709(e). According to Sears release of this information is barred by § 706(a), 42 U.S.C. § 2000e-5(b) (Supp. V 1975), which contains the remaining nondisclosure provisions of Title VII. Section 706(a) first provides that "[c]harges shall not be made public by the Commission." Then, after mandating conciliation efforts subsequent to a finding of probable cause, it states:

> Nothing said or done during and as a part of [informal methods of conference, conciliation, and persuasion] may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.

The first prohibition is obviously irrelevant to the disclosure at issue, for no charges are threatened to be released. The second provision is more problematic. EEOC argues first that it too is inapplicable. According to the Commission, since the statute makes no provision for predetermination settlement negotiations, but only for conciliation discussions held after a reasonable cause finding has been made, the prohibition is inapposite here, since admittedly conciliation discussions have not yet begun. Moreover, the Commission argues, even if the prohibition does apply to predetermination settlements, it does not apply to factual data produced during such negotiations, since that information would have been available to the Commission outside of such negotiations through its investigatory powers under § 709 of the Act, 42 U.S.C. § 2000e-8 (1970 & Supp. V 1975).

Neither of these arguments is meritorious. While it is true that the statute makes no mention of predetermination settlement negotiations, EEOC regulations do, 29 C.F.R. § 1601.19a (1976), and the same considerations that warranted the grant of confidentiality to conciliation matters also apply to those arising in the course of predetermination settlement negotiations. The Commission itself notes in this case: "Section 706(a) was meant to protect settlement discussions." And, as the Commission itself successfully argued in *Parker v. EEOC*, 534 F.2d 977 (D.C.Cir. 1976), there is no basis for distinguishing between predetermination and postdetermination negotiations in granting the confidentiality guarantee of § 706(a).

■ Furthermore, there is simply no basis for the argument that § 706(a) protects only the nonfactual portion of any proposal produced during negotiations. The statute itself makes no such distinction between the factual and nonfactual content of proposals; it simply says: "Nothing . . . done . . . as a part of [settlement negotiations] may be made public . . . ." The proposals in the instant case inextricably commingle factual data with nonfactual suggestions, and information presented in support of a proposal cannot be separated from the proposal itself. The Commission rests its position on the argument that it could have obtained factual information through interrogatories instead of negotiations, and thus have obtained the data free from the dictates of § 706(a). But this is no more persuasive than is the fact that most factual data obtained in the course of negotiations could be divulged anyway through discovery in a subsequent Commission lawsuit against Sears. Predetermination settlements are the product of EEOC, not of Congress. Having obtained factual information from Sears, not through the statutory course of investigation but with the hope of early settlement, the Commission is barred by § 706(a) from converting that information to fuel private litigation.

The Commission urges that even if § 706(a) governs the disclosure of all information produced during predetermination settlement negotiations, that section, like § 709(e), does not include charging parties within the term "public." Thus, it is said, charging parties can receive such information upon request. This analysis has the appeal of symmetry, but it is interesting to note that the Commission's own regulations do not reflect this symmetry. The regulation excluding charging parties from the scope of the term "public," 29 C.F.R. § 1601.20 (1976),[3] applies by its own terms to only two of the three statutory confiden-

---

3. § 1601.20 Confidentiality.

Neither a charge, nor information obtained pursuant to section 709(a) of title VII, nor information obtained from records required to be kept or reports required to be filed pursuant to sections 709(c) and (d) of said title, shall be made matters of public information by the Commission prior to the institution of any proceedings under this title involving such charge or information. This provision does not apply to such earlier disclosures to the charging party, the respondent, witnesses, and representatives of interested Federal, State, and local agencies as may be appropriate or necessary to the carrying out of the Commission's functions under the title, nor to the publication of data derived from such information in a form which does not reveal the identity of the charging party, respondent, or person supplying the information.

tiality provisions—those governing charges and investigative data gathered under § 709. It does not mention the provision restricting disclosure of informal settlement agreements. That provision is the subject of a different Commission regulation, *id.* § 1601.24,[4] which excludes from the "public" only "representatives of Federal, State, and local agencies." One may then question the force of the Commission's position in these cases.

Dicta approving the symmetry argument appears in *H. Kessler & Co. v. EEOC,* 472 F.2d at 1151, but § 706(a) was not the basis for decision in that case.[5] Charging parties should be held distinct from the "public" only where disclosure of charges[6] or investigatory data is concerned. Strong considerations of policy militate against going beyond the regulations to give charging parties access to settlement discussions, proposals, and compromises.

The Court has noted recognition by the Supreme Court of the clear congressional intention to establish conciliation and settlement as the primary means of enforcing Title VII. The facts of this case illustrate the strong national interest in that goal, for if the consolidated charge is not settled, the courts face the prospect of hundreds of individual suits against Sears. The Commission should be eager to resolve the charge administratively.

Unlike the filing of charges and the conduct of investigations, however, conciliation and settlement will not go forward unless the charged employer cooperates. Knowledge that anything "said or done" by way of settlement with EEOC will be disclosed to potential litigants is bound to dissuade candor and even participation by employers in a negotiated settlement.[7] The guarantee in § 706(a) of the confidentiality of such endeavors is an attempt to allay the fears of employers and to encourage settlement of charges. Therefore, the scope of confidentiality must be greater in the protection of negotiations than of charges and investigatory data. The requisite protection can be provided by interpreting the statutory language to deny charging parties access to settlement information.[8] The legislative goal of arming aggrieved parties as private attorneys general is in no way hindered by this interpretation. Unlike § 709(e), which

---

**4.** § 1601.24 Confidentiality of endeavors.

Nothing that is said or done during and as part of the information endeavors of the Commission to eliminate unlawful employment practices by informal methods of conference, conciliation, and persuasion may be made a matter of public information by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the parties concerned. This provision does not apply to such disclosures to the representatives of Federal, State, and local agencies as may be appropriate or necessary to the carrying out of the Commission's functions under the title: *Provided,* That the Commission may refuse to make disclosures to any such agency which does not maintain the confidentiality of such endeavors in accord with this section or in any circumstances where the disclosures will not serve the purposes of the effective enforcement of title VII.

**5.** The reasoning in *Kessler* in support of its dicta that charging parties are not members of the "public" within the meaning of the settlement nondisclosure provision of § 706(a) is somewhat suspect. The *Kessler* opinion, having misquoted the statute by substituting "parties" for "persons concerned," interpreted "parties" to include all charging parties. It

then deemed it anomalous to include those whose written consent is required for disclosure as members of the "public" to whom disclosure is prohibited. 472 F.2d at 1151 n.3. The Commission, however, has apparently construed "persons concerned" to include only "signatories" to the settlement agreement. *See Parker v. EEOC,* 534 F.2d 977, 979 (D.C.Cir. 1976). In this case, involving a nationwide conciliation, only EEOC and Sears would be signatories to an agreement. Thus, the anomaly noted by *Kessler* would not present itself.

**6.** It obviously makes no sense to prevent disclosure of a charge to the one who initiated the charge.

**7.** If such were the law, it is virtually certain that Sears would not have expended such considerable sums to array and produce new inculpatory data as part of its settlement proposals.

**8.** Interestingly, the House version of Title VII included but one nondisclosure provision—governing only settlement endeavors. The other two provisions were added by the Senate, which strengthened the settlement provision. *See* 110 *Cong. Rec.* 12807, 12813, 12815 (1964).

specifically authorizes the use of the Commission's investigatory data in private litigation, § 706(a) expressly prohibits the use of evidence derived from settlement endeavors in any subsequent proceeding. Thus, while disclosure of settlement information to charging parties would certainly chill the climate for conciliation, it would do little, if anything, in aid of private litigants.

### C. *The Nondisclosure Promise*

■ The outcome of the Court's ruling on the application of § 706(a) is reinforced by its findings on the alleged promise of confidentiality by the Commission. Sears contends that EEOC expressly promised to hold all information produced in the course of predetermination settlement discussions, as distinguished from material supplied pursuant to the regular Commission investigation, in full confidence. EEOC denies any such understanding. It claims that while it agreed to keep all proposals confidential, it remained free to segregate factual data from proposals so as not to reveal the proposal itself and to publish such data to charging parties. This sharp factual controversy was the subject of a two-day hearing before this Court. Nine witnesses appeared and numerous documents were received. The Court has determined that an agreement in fact was made on December 15, 1975, by which EEOC promised Sears to treat as privileged all written documents prepared and submitted by Sears as part of its predetermination settlement proposals and to hold them in complete confidence from the public. No distinction was made or understood between proposals containing statistics and other statements made during settlement. Separate contemporaneous minutes kept by each side at the December 15 meeting confirm this understanding, and the Court finds the Sears witnesses the more credible. EEOC did not repudiate this agreement until April 12, 1976, shortly after which the settlement attempt broke down.

■ The Commission argues that these promises are not binding because they contravene the Commission's regulations, 29 C.F.R. § 1601.20 (1976), and internal guidelines, *EEOC Compliance Manual* § 83, which, it is argued, give charging parties a right to the material covered by the promise. If the Commission's claim that its regulations and internal guidelines take precedence over an explicit pledge to the contrary were relevant, it would raise serious questions as to the integrity of the Commission's double-dealing. However, the Commission is incorrect in assuming that its provisions give charging parties a right to the disputed material. Not only does § 1601.20 not deal with disclosure of settlement information, but it also gives charging parties no right to any material. The regulation tracks the language of the statute, which is merely permissive; if it did not, the regulation would be void, for the Commission has no authority to vary the substance of the statute. The Commission's internal guidelines, however they are worded, do not have the force of law. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 431, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Thus they cannot confer a right upon private individuals. The Commission is bound by its promise. The result tracks that reached by an analysis of § 706(a).

■ Title VII thus affects disclosure in these cases as follows. Regarding requests for raw data by charging parties with a statutory right to sue, absent Sears' consent EEOC must sort its data and release only that information gained through the normal course of investigation rather than in the context of settlement proposals. No investigative information may be released unless the charging party signs the agreement of nondisclosure required by *EEOC Compliance Manual* § 83.4. The Commission Decision, because it inextricably commingles information governed by § 706(a) and information governed by § 709(e), will be governed by the stricter standard of § 706(a) and thus cannot be released without Sears' written consent. Letters of Determination shall henceforth contain nothing more than a simple notification of the decision.

## III. Other Claims

Sears relies on several other arguments to oppose even a limited release of information by EEOC. None are persuasive.

### A. Section 1905

Under 18 U.S.C. § 1905 (1970), government employees and agencies are prohibited from disclosing "to any extent not authorized by law" confidential trade or financial information gathered by a federal agency. Sears claims that § 1905 bars EEOC from releasing any investigative data to charging parties. The Commission replies that sections 709(e) and 706(a) authorize such release and thus fall within the exceptions clause of § 1905. The Court rejects both arguments, finding § 1905 wholly inapplicable to disclosures under Title VII.

The three prohibitions on disclosure found in Title VII are, like § 1905, criminal in nature. Title VII punishes a prohibited disclosure with a fine of not more than one thousand dollars, imprisonment for not more than one year, or both. 42 U.S.C. §§ 2000e–5(b), 2000e–8(e) (1970 & Supp. V 1975). These are substantially the same penalties imposed under § 1905, a statute antedating Title VII by sixteen years. The identity of criminal penalties attaching to criminal disclosure indicates Congress' intention that the Title VII prohibitions be exclusive. Congress placed top priority on eliminating employment discrimination and created both governmental and private mechanisms for so doing. It crafted the statutory framework for these mechanisms with great care. The Court will not assume that the precise prohibitions of Title VII were meant merely to supplement a statute of general application. Cf. Brown v. GSA, 425 U.S. 820, 834–35, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

### B. Administrative Procedure Act

Sears also attacks the proposed disclosure of information on the grounds that EEOC regulations and guidelines concerning data disclosure, 29 C.F.R. § 1601.20 (1976); EEOC Compliance Manual § 83, were unlawfully promulgated. It is argued that these provisions (1) are substantive and thus beyond the Commission's authority, and (2) were not issued in accordance with sections 3 and 4 of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 552, 553 (1970 & Supp. V 1975).

The Court agrees that the Commission is without authority to issue binding substantive rules. See K. Davis, Administrative Law Treatise § 5.04 at 252 (1970 Supp.). But § 1601.20 is not substantive in effect. It merely supplies the Commission's interpretation of the term "public" in the statutory provisions governing disclosure of charges and investigative data. Charging parties have no more right to such information under § 1601.20 than they do under the statutes themselves. The rule is interpretive, and as such its promulgation is within the inherent authority of the Commission. See 1 K. Davis, supra, § 5.03 at 300 (1958). Section 83 of the EEOC Compliance Manual is not a formal rule at all, but simply an internal guideline, and thus it creates no private rights. See Albemarle Paper Co. v. Moody, 422 U.S. at 431, 95 S.Ct. 2362. Even if it were a rule with the force of law, its promulgation would not be beyond the Commission's authority, for it is clearly procedural in effect, and Title VII provides the Commission express authority to issue procedural rules. 42 U.S.C. § 2000e–12(a) (1970). Neither § 1601.20 nor § 83 violate § 4 of the APA, for procedural and interpretive rules are exempt from the requirements of that section. 5 U.S.C. § 553(b)(A) (1970 & Supp. V 1975). And although § 83 was not published in the Federal Register in accordance with § 3 of the APA, Sears has no standing to complain of that failure since it had "actual and timely notice" of the contents of that guideline. Id. § 552(a)(1).

Sears also claims that the Commission's consolidation procedures are improper and prejudicial to Sears' rights, and that § 11 of the EEOC Compliance Manual, governing consolidation of charges, was not promulgated in accordance with the APA. The consolidation procedures are clearly ap-

propriate. The crushing caseload of EEOC is universally recognized. *See, e. g., Occidental Life Insurance Co. v. EEOC,* —— U.S. ——, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (quoting S.Rep. No. 415, 92d Cong., 1st Sess. 23 (1971)). In this case several hundred charges were lodged against Sears. Requiring a separate investigation and file for each charge would be a waste of precious administrative resources. *Cf. EEOC v. United States Fidelity & Guaranty Co.,* 414 F.Supp. 227, 11 Emp.Prac.Dec. ¶ 10,935 at 7946–48 (D.Md.1976). In addition, the fact that charging parties may, upon request, receive data related to, but not specifically concerned with their individual claims is not a prejudicial result of consolidation. As the Court has noted above, charging parties will receive no information beyond that to which they would have been entitled had the investigation not been consolidated. And since Sears was not "adversely affected" by consolidation and had "actual and timely notice" of the consolidation procedures, it cannot claim a violation in the Commission's failure to publish § 11 in the *Federal Register.* 5 U.S.C. § 552(a)(1) (1970 & Supp. V. 1975). Nor can it claim a violation of § 4 of the APA because, like the disclosure rules, § 11 is exempt from the requirements of that statute. *Id.* § 553(b)(A).

## C. *Freedom of Information Act*

■ Sears claims finally that various exemptions of the Freedom of Information Act ("FOIA"), *id.* § 552(b), bar disclosure of investigative data by EEOC. By the statute's own terms, the FOIA exemptions apply only to claims made under the Act. In these cases the information is neither sought nor will it be released under the FOIA.[9] Therefore, the exemptions are inapplicable.

Based on the foregoing the Court enters certain declarations and orders as set forth in the attached Judgment and grants partial summary judgment to each party in both Civil Action No. 77–393 and Civil Action No. 77–924.

## JUDGMENT

For the reasons set forth in the Memorandum of the Court filed this day, it is hereby

DECLARED that EEOC may release information obtained in the course of its consolidated investigation to any charging party requesting such information only if 180 days have passed since the filing of the charge and the requesting party signs the nondisclosure agreement required by *EEOC Compliance Manual* § 83.4. *Provided,* however, that only such information as is relevant to the individual charge shall be released; and

*Provided* that this provision shall be stayed, and confidentiality of all documents preserved, for thirty days in order to enable the plaintiff to determine upon and to perfect an appeal and to seek such further stay as it may desire in the United States Court of Appeals for the District of Columbia Circuit; and it is further

DECLARED that information obtained by the Commission in the course of predetermination settlement discussions, whether relevant or not, may not be released at any time without the consent of the plaintiff; and it is further

ORDERED that the defendants are enjoined from releasing to any person or organization other than a representative of a federal, state, or local agency the whole or any part of Commission Decision 77–21 without the written consent of the plaintiff; and it is further

DECLARED that Letters of Determination may not include any factual information relating to the charge; and it is further

ORDERED that all court papers sealed by prior order of the Court are to remain sealed subject to further Court order.

---

**9.** A single request made under the FOIA was rejected by the Commission.