Sadie H. GREENE, Plaintiff,

v.

THALHIMER'S DEPARTMENT STORE a/k/a Thalhimer Brothers, Inc., Defendant.

Civ. A. No. 81–1017–R.

United States District Court, E. D. Virginia, Richmond Division.

March 23, 1982.

Sa'ad El-Amin, Richmond, Va., for plaintiff.

William F. Etherington, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., David A. Maddux, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

Plaintiff Sadie H. Greene is a former employee of defendant Thalhimer's Department Store. Greene has filed a racial discrimination suit against Thalhimer's under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. §§ 2000e to 2000e–17 (1976). The plaintiff also has served a subpoena *duces tecum* on the Equal Employment Opportunity Commission (EEOC) requesting production of all materials contained in the plaintiff's file with the EEOC. *See* Fed.R. Civ.P. 45(b). The EEOC has moved to quash the subpoena on the ground that some of the requested materials are not discoverable. *See id.* 26(b), (c), 45(b), (d).

## I. FACTUAL BACKGROUND

On June 6, 1979, Thalhimer's discharged Greene from her position as a cashier. On June 12, 1979, Greene filed a racial discrimination charge against her former employer with the EEOC. This charge essentially alleges three acts of discrimination: (1) that Thalhimer's discharged the plaintiff because of her race; (2) that Thalhimer's paid her lower wages because of her race; and (3) that Thalhimer's failed to take action when she reported racial slurs by her co-workers.

After a preliminary investigation, the Baltimore District Office of the EEOC determined that there was "reasonable cause to believe that the charge is true." Letter from Baltimore District Office of EEOC to Sadie H. Greene (July 10, 1981). The EEOC then began an attempt to reconcile the parties. Conciliation, however, proved futile, because Thalhimer's asserted that the charges were groundless. On October

23, 1981, the EEOC issued a right-to-sue letter to Greene.

On November 23, 1981, Greene filed a Title VII action against Thalhimer's in this court. The complaint in this action makes the same allegations as Greene's EEOC charges. On February 2, 1982, the plaintiff served a subpoena *duces tecum* on the director of the EEOC's Baltimore District Office. The subpoena directed the EEOC to produce for inspection "the complete file of Ms. Sadie H. Greene, who was the charging party in a complaint filed against Thalhimer's Department Store, Richmond, Virginia."

On February 12, 1982, the EEOC filed a motion to quash the subpoena and a motion for a protective order. *See* Fed.R.Civ.P. 26(b)(1), (c), 45(b), (d). The EEOC has agreed to produce most of the documents in the file. It, however, objects to discovery of certain intra-agency memoranda, reports, and routing documents on the ground that executive privilege protects these materials from disclosure. The EEOC also opposes the production of certain materials associated with its conciliation efforts. The agency maintains that section 2000e–5(b) prohibits discovery of these documents. *See* 42 U.S.C. § 2000e–5(b) (1976). The EEOC has submitted the materials that are the subject of these objections to the court for *in camera* inspection.

## II. LEGAL ANALYSIS

The subpoena served on the EEOC directs it to produce all documents contained in its file on Greene's charges against Thalhimer's. Under Rule 26(b)(1), this material is subject to discovery if it is "not privileged." *See* Fed.R.Civ.P. 26(b)(1). The EEOC contends that some of the requested documents are not discoverable, because they are protected by one of two privileges.

■ The first privilege asserted by the EEOC is common-law executive privilege. The purpose of this privilege is to protect the governmental decisionmaking process. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975); *Branch v. Phillips Petro-*

*leum Co.*, 638 F.2d 873, 881–82 (5th Cir. 1981); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324–25 (D.D.C. 1966), *aff'd sub nom. V.E.B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C.Cir.), *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). This policy consideration determines the scope of the privilege:

[A]pplication of the official privilege is founded on the belief that there are certain governmental processes related to legal and policy decisions which cannot be carried out effectively if they must be carried out under the public eye. Government officials would hesitate to offer their candid and conscientious opinions to superiors or co-workers if they knew that their opinions of the moment might be made a matter of public record at some future date.

*Branch v. Phillips Petroleum Co.*, 638 F.2d at 881–82. Thus, executive privilege shields from disclosure "intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. at 324. *Accord NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 150, 95 S.Ct. at 1516 (quoting *Carl Zeiss*); *Branch v. Phillips Petroleum Co.*, 638 F.2d at 881 (quoting *Carl Zeiss*).

■ There are two important limitations on the executive privilege doctrine. First, the privilege does not protect communications or reports made after completion of the deliberative process. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 151, 95 S.Ct. at 1516. Discovery of such material does not jeopardize the decisionmaking function. *See id.* Second, the privilege does not prohibit disclosure of factual materials. *See EPA v. Mink*, 410 U.S. 73, 87–88, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973); *Branch v. Phillips Petroleum Co.*, 638 F.2d at 882; *EEOC v. Wagner Electric Corp.*, 9 Empl.Prac.Dec. (CCH) ¶ 9985 (E.D.Mo. 1973); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. at 327. An agency must produce "compiled factual material or

purely factual material contained in deliberative memoranda and severable from its context." *EPA v. Mink*, 410 U.S. at 87–88, 93 S.Ct. at 836. *Accord Branch v. Phillips Petroleum Co.*, 638 F.2d at 882.

■ The second privilege invoked by the EEOC is the statutory privilege created by section 2000e–5(b). This section provides that materials relating to conciliation efforts may not "be made public by the Commission . . . or used as evidence in a subsequent proceeding without the written consent of the persons concerned." 42 U.S.C. § 2000e–5(b) (1976). The critical question is whether the charging party is a member of the "public" to whom the statute prohibits disclosure.

The relevant policy considerations indicate that substantive conciliation materials should not be discoverable. In *Sears, Roebuck & Co. v. EEOC*, 435 F.Supp. 751 (D.D.C.1977) *rev'd in part*, 581 F.2d 941 (D.C.Cir. 1978), the district court held that charging parties were not members of the public for purposes of the Title VII provisions regulating disclosure of charges and investigatory data. *See* 435 F.Supp. at 756–57. The language used in these provisions is virtually identical to the wording of the clause governing conciliation materials.[1] The district court, nonetheless, ruled that "[s]trong considerations of policy" prevented it from interpreting the latter clause to give charging parties access to conciliation materials:

Unlike the filing of charges and the conduct of investigations, however, conciliation and settlement will not go forward unless the charged employer cooperates. Knowledge that anything "said or done" by way of settlement with EEOC will be disclosed to potential litigants is bound to dissuade candor and even partic-

ipation by employers in a negotiated settlement. The guarantee in [section 2000e–5(b)] of the confidentiality of such endeavors is an attempt to allay the fears of employers and to encourage settlement of charges. Therefore, the scope of confidentiality must be greater in the protection of negotiations than of charges and investigatory data. The requisite protection can be provided by interpreting the statutory language to deny charging parties access to settlement information. The legislative goal of arming aggrieved parties as private attorneys general is in no way hindered by this interpretation. Unlike [section 2000e–8(e)], which specifically authorizes the use of the Commission's investigatory data in private litigation, [section 2000e–5(b)] expressly prohibits the use of evidence derived from settlement endeavors in any subsequent proceeding. Thus, while disclosure of settlement information to charging parties would certainly chill the climate for conciliation, it would do little, if anything, in aid of private litigants.

*Id.* at 759–60 (footnotes omitted). The district court, therefore, held that charging parties are members of the public for the purpose of conciliation materials. *See id.* at 759; *accord Branch v. Phillips Petroleum Co.*, 638 F.2d at 880–81; *Haykel v. G.F.L. Furniture Leasing Co.*, 76 F.R.D. 386, 392 (N.D.Ga.1976).

Despite these policy considerations favoring the confidentiality of conciliation materials, the Supreme Court has stated in dicta that the parties are not members of the public with respect to such materials. *See EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 598 & n.13, 101 S.Ct. 817, 822 & n.13, 66 L.Ed.2d 762 (1981). In particular,

---

1. The three nondisclosure provisions of Title VII use similar wording to convey their restrictions. Section 2000e–5(b) provides that "[c]harges shall not be made public by the Commission." 42 U.S.C. § 2000e–5(b) (1976). This section goes on to mandate that "[n]othing said or done during and as a part of such informal [conciliation] endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the

persons concerned." *Id.* Finally, section 2000e–8(e) makes it "unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this title involving such information." *Id.* § 2000e–8(e). Thus, the term "made public," or a close variation of that term, appears in all three provisions.

the Court has noted that section 2000e–5(b) "forbids public disclosure of any matters arising in informal conciliation 'without the written consent of the persons concerned.' This phrase suggests that the parties, the 'persons' whose consent would most obviously be necessary, are not members of the 'public' to whom disclosure is forbidden." *Id.* at 598 n.13, 101 S.Ct. at 822 & n.13 (citations omitted). Thus, this court, despite its reluctance to do so, must hold that conciliation documents are discoverable by the charging party.

■ The court, however, will place two restrictions on use of conciliation materials by the plaintiff Greene. First, as mandated in section 2000e–5(b), the plaintiff may not use the materials "as evidence in a subsequent proceeding without the written consent of the persons concerned." 42 U.S.C. § 2000e–5(b) (1976). Second, the court limits access to the materials to Greene, her attorney, and the attorney's support staff. These persons may not disclose the contents of the materials to anyone else. The court feels that this second limitation is necessary in light of the policy considerations previously discussed. *See EEOC v. St. Francis Community Hospital,* 70 F.R.D. 592, 594–95 (D.S.C.1976). Thalhimer's may have access to the conciliation materials on the same terms that they are available to Greene.

The court refers this matter to the United States Magistrate for implementation of the rulings in this memorandum. The Magistrate first should cull out all documents that do not fall within the scope of executive privilege or the conciliation material provision. The Magistrate may release these materials to the parties. The Magistrate next should pull out purely factual passages contained in privileged documents where those passages are severable from their context. This material may also be turned over to the parties. The Magistrate may release substantive conciliation documents under the restrictions described above. Finally, the Magistrate should place under seal documents protected by executive privilege. These documents are exempt from discovery by the parties.