Hung Wong WONG, Feek Yin Wong, Kim Woo and Holly Woo, Plaintiffs,

v.

CITY OF NEW YORK, New York City Police Department, P.O. Steven Rinchey, P.O. Patricia Sweeney, P.O. 'John' Lee, Unnamed P.O.'s Boe, Coe, Doe, et al., Manhattan Cable, and Edwin Reyes, Defendants.

No. 87 Civ. 5380 (WK).

United States District Court, S.D. New York.

Jan. 27, 1989.

James I. Meyerson, Michael Shen, Shneyer & Shen, P.C., New York City, for plaintiffs.

Peter L. Zimroth, Corp. of City of New York, Susan M. Kath, Steven H. Mosenson, Asst. Corp. Counsel, New York City, for defendants City of New York, New York City Police Dept., P.O. Steven Richney, P.O. Patricia Sweeney, and P.O. "John" Lee.

Michele Schuster, Semel, Boeckmann, Diamond, Schepp & Yuhas, New York City, for defendants Manhattan Cable and Edwin Reyes.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Defendants City of New York, New York City Police Department, P.O. Steven Richney, P.O. Patricia Sweeney and P.O. "John" Lee object to Magistrate Naomi Reice Buchwald's memorandum and order of December 9, 1988 denying their motion for a protective order of certain statements made by police officers during an Internal Affairs Division investigation of the incident which is the subject of this lawsuit. We have carefully considered the various briefs and affidavits submitted by the parties and, although we share the Magistrate's extreme reluctance to differ with the views of the late Judge Weinfeld, we approve her memorandum and order in its entirety and make it a part hereof.

SO ORDERED.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, United States Magistrate.

The municipal defendants have moved for a protective order barring the disclosure of certain statements made by police officers, some of whom are also named as defendants in this action. Those statements were taken during the course of an Internal Affairs Division investigation of the incident which is the subject of this lawsuit and were taken under the provisions of Patrol Guide 118–9 ("P.G. 118–9"). They are commonly referred to as G.O.–15 Statements.

The full text of P.G. 118–9 is annexed to the affidavit of Daniel F. Sullivan, Chief of

Investigational Services of the Police Department of the City of New York, which has been submitted in support of the motion for a protective order. P.G. 118–9 provides that "if a member of the service (uniformed or civilian) is under arrest or is the subject of a criminal investigation or there is a likelihood that criminal charges may result from the investigation.... that certain warnings should be given." First, the member of the Police Department is informed of his fifth amendment rights. The officer is also informed that should he refuse to testify he will be subject to departmental charges which could result in his dismissal from the Police Department. In addition, the officer is informed that neither his statements nor derivative information therefrom may be used against him in a subsequent criminal proceeding, but that the statements may be used against him in subsequent departmental charges. Furthermore, the officer is informed that the questions and answers resulting from the interrogation are "confidential" and "[t]hey are not to be revealed nor released to any person or agency outside the department without prior written approval of the Deputy Commissioner–Legal Matters."

■ In seeking a protective order, the municipal defendants rely upon the so-called "official information privilege."[1] It is common ground that the "official information privilege" is not absolute, and that the Court must balance the interests favoring and disfavoring disclosure. The burden of persuasion is on the party seeking the protective order. While the cases discuss many factors to be applied by the Court in its weighing process, the essence of the debate on this motion is whether the disclosure of the G.O.–15 Statements would have a chilling effect on officers' candor in future investigations. Chief Sullivan has attested to such a chilling effect:

> Unless police officers are assured of the confidentiality of their statements made during intra departmental investigations, it is doubtful that the officers' cooperation could be secured. The public inter-

est in the maintenance of a police force with a reputation for swift and effective investigation of allegations of corruption and misconduct must be held paramount. That reputation and ability is founded upon P.G. 118–9. The confidentiality of statements obtained should thereby be recognized and upheld.

Affidavit of Daniel F. Sullivan, sworn to on October 20, 1988, ¶ 6.

However, the cases are in disagreement as to the predictive impact of such disclosure. On the one hand, Judge Weinfeld in *Brown v. Matias,* 102 F.R.D. 580 (S.D.N.Y. 1984) found:

> In contrast, the public interest in preserving the confidentiality of the G.O.–15 Statements is tangible and weighty. It is especially significant that such statements are elicited only after a grant to the officer of use immunity with respect to potential criminal prosecutions and upon the following explicit representation:
>
> > The questions and answers resulting from the interrogation conducted pursuant to this procedure are confidential. They are not to be revealed nor released to any person outside the department without prior approval of the Deputy–Commissioner Legal Matters.
> >
> > Aff. of Harold J. Hess, Ex. 1.
>
> It is thus open to doubt whether but for the representation above the statements sought would exist at all. If production of the statements is required in this case, the effect of the Police Department's assurance of confidentiality may be severely eroded and information critical to future police investigations may be lost.

102 F.R.D. at 582.

In contrast, other courts have rejected that argument. A recent decision by Judge Weinstein, *King v. Conde,* 121 F.R.D. 180 (E.D.N.Y.1988), addressed this issue at length, quoting many of the relevant authorities. For completeness, I quote Judge Weinstein's discussion extensively:

> This argument is probably often overstated, and courts should be wary of

---

**1.** The municipal defendants have complied with the procedural requirement that they present a threshold showing explaining the interests which they believe would be harmed by submitting the affidavit of Chief Sullivan. *King v. Conde,* 121 F.R.D. 180, 190 (E.D.N.Y.1988).

relying on it in restricting discovery. First, the possibility of disclosure to civil rights plaintiffs is probably not of great import to the officers at the time they file their reports. Civil rights lawsuits are few and far between compared to the immediate and certain review by superiors within the police department and its internal investigative arm. *See Denver Policemen's Protective Association v. Lichtenstein,* 660 F.2d 432, 437 (10th Cir. 1981). An officer's incentives to hide a friend's misconduct, or to be scrupulously forthcoming lest he be disciplined for having concealed information, are probably much more closely tied to the internal investigative machinery than to the fear of civil rights litigation. *See Wood v. Breier,* 54 F.R.D. 7, 12–13 (E.D.Wisc. 1972)....

An officer's financial responsibility for civil rights claims is likely to be slight (because he is relatively judgment proof or indemnified by his employer), whereas he (or his friends) may face termination or prosecution in internal affairs investigations. In sum, disclosure to civil rights litigants is probably a minute influence on officers' candor. *See Kelly [v. City of San Jose] supra,* 114 F.R.D. [653] at 665 [N.D.Cal.1987]....

Second, there is no empirical evidence of which this court is aware supporting the "chilling" contention. *Accord Kelly, supra,* 114 F.R.D. at 664–65. Without some basis for believing that real police officers conceal or distort their statements to internal investigatory bodies, courts should reject this contention. *See Wood v. Breier, supra,* 54 F.R.D. at 13 (doubting much "real world" harm to police department's internal investigations from disclosure)....

Third, if the fear of disclosure in civil rights lawsuits does have some real effect on officers' candor, the stronger working hypothesis is that fear of disclosure is more likely to increase candor than to chill it. The court in *Mercy v. County of Suffolk,* 93 F.R.D. 520 (E.D. N.Y.1982) spoke forcefully:

> On the contrary, limited disclosure can only further this policy [ensuring proper police conduct through police self-evaluation].... No legitimate purpose is served by conducting the investigations under a veil of near-total secrecy. Rather, knowledge that a limited number of persons, as well as a state or federal court, may examine the file in the event of civil litigation may serve to ensure that these investigations are carried out in an evenhanded fashion, that the statements are carefully and accurately taken and that the true facts come to light, whether they reflect favorably or unfavorably on the individual police officers involved or on the department as a whole.

*Id.* at 522. Similarly, the court in *Kelly, supra,* 114 F.R.D. 653, concluded that disclosure will improve the honesty of internal affairs filings:

> [S]trong arguments can be advanced that it is the alternative in which there is some possibility of disclosure [that] is most conducive to candor.... In short, officers will feel pressure to be honest and logical when they know that their statements and their work product will be subject to demanding analysis by people with knowledge of the events under investigation and considerable incentive to make sure that the truth comes out (i.e., a civil rights plaintiff and her lawyer). Thus there is a real possibility that officers working in closed systems will feel less pressure to be honest than officers who know that they may be forced to defend what they say and report [*id.* at 665]....

121 F.R.D. at 192–93.

Having considered the conflicting authorities and despite a general reluctance to disagree with the late Judge Weinfeld, I am inclined to agree with those judges who have concluded that the possibility of disclosure of G.O.–15 Statements in a civil rights suit will have a minimal, if any, adverse impact on police officers' candor in internal affairs investigations. Essentially, any concern about future civil litigations would be too remote and other concerns far more immediate *and* significant. In sum, I

do not find the factors disfavoring disclosure to be compelling.

The municipal defendants also contend that the plaintiffs have not demonstrated a sufficient need for the G.O.–15 Statements since the plaintiffs have been provided with the names of the officers interviewed by the Internal Affairs Division and have had the opportunity to depose the defendant police officers. While it is indisputable that plaintiffs have had considerable discovery in this case, there is little substitute for the contemporaneous information sought even if the sole use to which it is put is cross-examination. *Cf. Brown v. Matias*, 102 F.R.D. at 582. In addition, the well-established importance of the enforcement of the federal civil rights laws must be considered, as well as the absence of any basis to characterize the plaintiffs' case as frivolous. *See generally King v. Conde*, 121 F.R.D. at 194–95.

On the basis of the foregoing discussion, the municipal defendants' motion for a protective order is denied. The documents should be produced in accordance with prior confidentiality stipulations negotiated by the parties.

IT IS SO ORDERED.