**Thomas Lane CASTLE, Plaintiff,**

v.

**Sgt. JALLAH, Powhatan Correctional Center, et al., Defendants.**

Civ. A. No. 91–422–N.

United States District Court, E.D. Virginia, Norfolk Division.

July 23, 1992.

Thomas Lane Castle, pro se.

Sgt. Jallah, pro se.

Robert Harkness Herring, Jr., Asst. Atty. Gen., Richmond, Va., for defendants D.A. Williams, et al.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiff, a Virginia inmate, has submitted a *pro se* complaint, pursuant to 42 U.S.C. § 1983, to redress alleged violations of his constitutional rights.

*Defendants' Response to Plaintiff's Amended Complaint*

By order filed March 18, 1992, this court granted plaintiff leave to file an amended complaint to include new counts and join additional defendants. The court directed the newly-joined defendants to file responsive pleadings within twenty-three (23) days from the date of that order. The Attorney General's Office then notified this court that defendant Seay was no longer an employee of the Department of Corrections and that he had left the state and could not be located. On that basis, the Attorney General's Office stated that it could not accept service of the complaint as against Seay. The Attorney General's Office also notified the court that the Department of Corrections had no record of an officer employed at Powhatan Correctional Center by the name of Willis. Accordingly, because the court never obtained personal jurisdiction over Seay and Willis, they are not defendants in this action. The Clerk is DIRECTED to correct the docket sheet to reflect this fact. If plaintiff can provide the court with additional information as to the whereabouts of these officers, he may file a new complaint against them.

By motion filed April 7, 1992, the remaining defendants [1] requested an extension of time in which to file their response. By order dated April 17, 1992, for good cause shown, the court granted defendants' request for an extension of time and directed them to file responsive pleadings or an appropriate motion within twenty-three (23) days from the date of that order.

On May 11, 1992, defendants filed a motion to dismiss or, in the alternative, for summary judgment as to plaintiff's amended complaint. Accompanying the motion were several exhibits which purported to be affidavits. However, Exhibits I, IV, and V contain neither the affiant's signature nor a notary's attestation. Exhibit III likewise lacks an attestation. Accordingly, the Clerk has marked these documents filed subject to defect. Only exhibits II, VI, and VII have been filed without defect. Although counsel for defendants stated in a letter of May 8, 1992, that proper copies of these documents would be submitted as soon as they were received, defendants' time in which to respond has expired, and the court still has not received corrected versions of these affidavits.

If defendants wish the court to consider their defective exhibits, they are DIRECTED to submit proper copies within twenty (20) days from the date of this order. If defendants fail to do so within twenty days, the court will order the defective exhibits stricken from the record. At that time, the court will give plaintiff a chance to respond to those defense exhibits which have been properly submitted.

*Williams' Motion for a Protective Order*

Warden Williams has requested a protective order as to plaintiff's request for a subpoena *duces tecum* for the following documents:

1. Copies of any statements maintained by the Internal Affairs Unit concerning the incidents of December 8, 1990, and January 6, 1991;

2. Copies of any statements obtained from Officers Jallah, Widner, Seay, White and Bailey in the possession of Institutional Investigator Sgt. Cassel or the Internal Affairs Unit; and

3. Copies of the following confidential Departmental Operating Procedures (DOPs):

 a. 403 (staff training);

 b. 421 (reporting institutional incidents);

 c. 422 (emergency response plans);

 d. 422.5 (emergency response team);

---

**1.** In addition to Sgt. Jallah, the defendants in this action are Dunmoodie, Booker, Ball, Widner, Bailey, White and Couto.

e. 422.17 (riot or major disturbance or response plans);

f. 431 (use of physical force);

g. 432 (use of restraining devices).

Plaintiff also had requested access to (a) certain medical records and (b) copies of any entries in the institutional log book concerning medical attention and any incidents involving plaintiff Castle between December 7, 1990, and January 15, 1991. By order entered April 17, 1992, the court denied plaintiff's motion for the issuance of a subpoena *duces tecum* for item (a), his medical records, based on Williams' assertion that plaintiff could review the records by appointment in the medical department.[2] Williams made no mention, however, of plaintiff's request for a subpoena *duces tecum* as to (b), above. On this basis, the court assumes that Williams has no objection to providing plaintiff with access to these documents. It therefore DIRECTS the Clerk to issue a subpoena *duces tecum* as to these documents.

Also by order dated April 17, 1992, the court directed Warden Williams to submit a supplemental memorandum in support of his motion for a protective order as against plaintiff's request for a subpoena *duces tecum*.[3] Williams complied on May 13, 1992, by submitting a supplemental memorandum and an affidavit in support thereof.[4] Plaintiff then submitted a memorandum in opposition to Williams' request for a protective order.

 Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Although Williams

is no longer a party, the scope of discovery from a nonparty by means of a subpoena *duces tecum* under Rule 45 is coextensive with that of a motion for production from a party under Rule 34. 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2457, at 431–32 (1970). In addition, *pro se* litigants are entitled to the use of discovery procedures in civil rights cases on the same terms as litigants represented by counsel. *Kirby v. Blackledge*, 530 F.2d 583, 588 (4th Cir.1976). Finally, the burden is on the person objecting to discovery—in this case, Warden Williams—to show that discovery should not be allowed. *Mueller v. Walker*, 124 F.R.D. 654, 656 (D.Or.1989); 8 Wright & Miller, *supra*, § 2214, at 644.

 Williams has asserted a governmental privilege to bar disclosure of certain factual statements and DOPs to which plaintiff seeks access. Rule 501 of the Federal Rules of Evidence states that "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States...." The party seeking to invoke the privilege bears the burden of justifying its application. *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988). Under the common law, executive privilege is defined as "the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest." *Clark v. Township of Falls*, 124 F.R.D. 91, 92 (E.D.Pa.1988); *see Greene v. Thalhimer's Dep't Store*, 93 F.R.D. 657, 659 (E.D.Va. 1982). The purpose of this privilege is to protect the governmental decisionmaking process by shielding from discovery "intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which

---

2. Plaintiff did not dispute this statement.

3. Although plaintiff's motion was originally one to compel discovery from a party, Warden Williams is no longer a party. As a result, by order dated April 17, 1992, the court converted plaintiff's motion into one to compel discovery from a nonparty via a subpoena *duces tecum*.

Williams has noted his objection to this conversion.

4. Williams submitted the affidavit of E.W. Murray, VDOC Director, regarding the ramifications of disclosure of the confidential departmental operating procedures plaintiff seeks.

governmental decisions and policies are formulated." *Greene*, 93 F.R.D. at 659 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd sub nom. V.E.B. Carl Zeiss Jena v. Clark*, 384 F.2d 979 (D.C.Cir.), *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967)). The privilege typically does not, however, protect disclosure of purely factual materials. *Id.* (citations omitted). Accordingly, "[a]n agency [usually will be required to] produce 'compiled factual material or purely factual material contained in deliberative memoranda and severable from its context.'" *Id.* at 659–60 (citations omitted).

Courts recognize that such determinations may not necessarily be made easily. When executive privilege is asserted, "the court must balance the public interest in the confidentiality of governmental information against the need of a litigant to obtain data, not otherwise available to him, with which to pursue [his] cause of action." *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973) (motion to compel discovery of police reports of investigation regarding shooting). With this in mind, courts in other circuits have articulated a variety of factors to be considered. In the seminal case in this area, *Frankenhauser v. Rizzo, id.,* the district court set out the following ten factors to be considered in the context of discovery of investigative files in civil rights cases:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) the impact upon persons who have given information of having their identities disclosed;

(3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

(4) whether the information sought is factual data or evaluative summary;

(5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) whether the police investigation has been completed;

(7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8) whether plaintiff's suit is non-frivolous and brought in good faith;

(9) whether the information sought is available through other discovery or from other sources; and

(10) the importance of the information sought to plaintiff's case.

*Id.* at 344; *see Mueller*, 124 F.R.D. at 656–59; *Wong v. City of New York*, 123 F.R.D. 481, 482–84 (S.D.N.Y.1989); *King*, 121 F.R.D. at 191–96; *Urseth v. City of Dayton*, 110 F.R.D. 245, 253–54 (S.D.Ohio 1986).

To the extent that plaintiff seeks discovery of factual statements concerning the incidents of December 8, 1990, and January 6, 1991, the court determines that plaintiff's request is not barred by governmental privilege under the applicable factors enumerated above. Williams has given no indication that the factual statements plaintiff seeks would have a "chilling [effect on] police internal investigative candor." *King*, 121 F.R.D. at 192–93; *see Wong*, 123 F.R.D. at 482–84. Similarly, he has failed to assert that plaintiff's case was brought in bad faith. It also is clear that the factual statements plaintiff seeks may be very important to his case. These internal factual statements and reports were made at a time much closer to the incident in question and are therefore more likely to be accurate. It is doubtful that plaintiff could receive detailed factual accounts of the incident from any other source. *See Wong*, 123 F.R.D. at 484.

Accordingly, plaintiff is entitled to have access to the factual portions of those documents listed in categories 1 and 2 above, *supra* at 619. However, to the extent that these documents may contain deliberative material, Williams may submit them to the court for an *in camera* examination so that the court may determine the appropriateness of excising nonfactual portions which

may be covered by the privilege. If the court does not receive such a request from Williams within twenty (20) days from the date of this order, the court will assume that these documents will be produced in their entirety for plaintiff's inspection in response to the subpoena *duces tecum* to be issued this date by the Clerk.

■ The court examines plaintiff's request for production of certain confidential departmental operating procedures in a different light. Plaintiff has asserted that these procedures are relevant to his case and has argued that the Virginia Code requires that copies of these rules be made available to prisoners. Williams has objected strenuously to production both on grounds of relevance and privilege. He argues that Castle's complaint presents clear-cut allegations of use of excessive force and that plaintiff has not claimed, for example, that the alleged harm resulted from improper training or the failure of defendants to respond properly to a major riot disturbance. Williams also submitted the affidavit of E.W. Murray, Director of the Virginia Department of Corrections. Murray stated under oath that the "production of these materials to a prison inmate would compromise institutional security, would negate the effectiveness of any response by security personnel to an inmate disturbance, and would jeopardize the safety of those officers who respond." Murray Aff. at 1 (May 8, 1992).

This court determines that the confidential DOPs have little, if any, relevance to plaintiff's excessive force claim. The court also determines, based on Murray's affidavit, that the revelation of these procedures to plaintiff or other inmates would jeopardize the security of the institution. If inmates were to learn, for instance, how guards were trained to respond to a prison riot, they could more effectively circumvent security procedures, thereby presenting an even greater threat to the safety of prison employees and nonparticipating inmates. In addition, plaintiff has no right of access to these procedures under state law. The code section he cited states only that "copies of all such rules shall be made available to prisoners *under such terms and conditions as the Director may prescribe.*" Va.Code Ann. § 53.1-25 (Michie 1991) (emphasis added). The court does not read this section to mandate prisoner access to rules deemed confidential by the Director. Therefore, applying the balancing test of *Frankenhauser, see supra* at 621, the court determines that institutional security far outweighs any need plaintiff may have for the confidential DOPs. For this reason, the court DENIES plaintiff's motion to compel production of the DOPs delineated in category 3 above, *supra* at 621.

Based on the foregoing, the Clerk is DIRECTED to issue a subpoena *duces tecum* to Warden Williams, directing him to produce all factual statements—including those made by Officers Jallah, Widner, Seay, White and Bailey—concerning the incidents of December 8, 1990, and January 6, 1991, in the possession of Institutional Investigator Sgt. Cassel or the Internal Affairs Unit. As Warden Williams requested, the court ORDERS plaintiff NOT to disseminate this information to any other inmate, either orally or in writing. Violation of this order will result in contempt proceedings against plaintiff.

It is so ORDERED.